[Crim. No. 11689. In Bank. Dec. 11, 1968.]

In re OSBORN OLDEN on Habeas Corpus.

Osborn Olden, in pro. per., Gerald Z. Marer, under appointment by the Supreme Court, and Long & Levit for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Michael J. Phelan, Deputy Attorneys General, for Respondent.

TRAYNOR, C. J.—On February 21, 1968, we issued an order to show cause on the basis of petitioner's pro se application for habeas corpus alleging that he suffered a nervous breakdown because custodial officers in San Quentin mistreated him in January and February 1967, after he was placed in isolation because of his violation of prison rules.[1]

Respondent's return, filed March 15, 1968, avers that petitioner has a long-standing, serious mental and emotional problem, recognized by the psychiatric staff at San Quentin and manifestly antedating and not caused by any conditions of his imprisonment during January and February 1967. Institutional records as to petitioner, made a part of the record in this proceeding, effectively refute any suggestion that he may have been subjected to cruel punishment in violation of his fundamental rights and show that his bizarre behavior in January and February 1967 was a manifestation of his preexisting psychiatric problem.[2]

---

[1]Petitioner alleged that early in January 1967, when he was placed in isolation for violating a prison rule, he was under the influence of an hallucinatory drug that had been administered without his knowledge. About January 16 prison doctors interviewed him and one of them told petitioner he was recommending his transfer to another institution. From January 23 to February 14 the toilet in petitioner's cell was out of order, his custodians refused to repair it, and the floor of the cell was covered with human waste. On February 10 petitioner was placed in the prison hospital psychiatric unit and received pills for three days. On February 16 he suffered a mental breakdown because of withdrawal of the pills; guards then took him from his cell, beat and kicked him, and placed him naked in a strip cell with a temperature below 40 degrees. For one day he was in the strip cell with no covering and for another half day he had only an oily blanket. From January 16 to February 28, 1967, he was not allowed to bathe or shave and was not furnished with clean clothing.

[2]Petitioner was first received at the Chino Reception Guidance Center in 1959 under a second degree burglary sentence. After two and one-half years he was released on parole.

In January 1964 he was received at the Chino Reception Guidance Center after conviction of burglary, lewd and lascivious conduct with a girl of five, forcible rape of the child, and kidnaping. (These crimes were committed during a continuing course of conduct; sentences were imposed for the burglary, lewd conduct and kidnaping, but not for the rape.) Before petitioner was sentenced for the new crimes he was com-

On March 22, 1968, Mr. Gerald Z. Marer, counsel appointed for petitioner by this court, interviewed petitioner at San Quentin. On March 29 petitioner was transferred to the Medical Facility at Vacaville, and in May 1968 Mr. Marer interviewed petitioner and the psychiatrist in charge of his case. Counsel then advised us by letter that according to the

---

mitted to Atascadero for determination as to whether he was a mentally disordered sex offender. The Atascadero staff concluded that he was not, but its report of October 15, 1963, refers to petitioner as ''basically psychotic'' and to his Rorschach test as a ''blatantly schizophrenic record.'' The Reception Guidance Center staff recommended ''placement in a psychiatric setting, preferably at CMC-East'' (Los Padres) but on order of the Classification Staff Representative petitioner was placed in San Quentin for the stated reason that ''psychiatric services are more available there and San Quentin fits in better with likely time factors.'' (The trial judge and district attorney had recommended that petitioner should remain incarcerated for the rest of his life.)

Petitioner was received at San Quentin in April 1964. His disciplinary record through 1966 is not good but nothing in the records before us suggests that his infractions had any appearance of psychotic behavior.

A psychiatric evaluation of December 14, 1966, prepared for the Adult Authority states that ''there is a suggestion of a possible schizophrenic process underlying subject's apparent responses which has not yet been fully exposed.''

On January 10, 1967, petitioner flushed personal property of his cellmate down the toilet. At a disciplinary hearing he explained that he did this because the property was being used to magnetize him and extract his personal thoughts. In connection with this hearing prison officers reported other instances of bizarre behavior. The disciplinary committee ordered him placed in isolation and referred to the psychiatric department for a recommended transfer to the California Medical Facility.

Three times during February 1967 petitioner set fire to his mattress and on one of these occasions he also destroyed the toilet. He explained that the burnings were impelled by or were to destroy spirits or devils. At a disciplinary hearing petitioner pleaded guilty to these three incidents of destruction of state property but was found not guilty ''by reason of emotional disability and long delusional history.'' After each of the incidents he was placed in the prison hospital for psychiatric examination. There he announced his belief that he was about to have a baby, but he also stated that he ''would do anything'' to get a transfer. The examining doctor concluded that petitioner was neither psychotic nor a suitable candidate for in-patient therapy.

In March 1967 an associate warden's attempt to have petitioner transferred to the California Medical Facility failed because of the psychiatric department's continuing opinion that petitioner was not psychotic.

Twice in May and again in June and July, petitioner slashed his wrists superficially. He explained one of these occurrences as necessary to release energy and another as impelled by spirits. Psychiatric examination after these incidents resulted in the conclusion that petitioner was trying to get a transfer, and the disciplinary committee advised him that such conduct would not have that result and that petitioner must bear responsibility for his actions.

A psychiatric evaluation of December 26, 1967, prepared for the Adult Authority, discussed petitioner's history of bizarre behavior and delusions and recommended his transfer to the Medical Facility. A memorandum of February 20, 1968, from the chief psychiatrist to the warden of San Quentin repeats this recommendation.

psychiatrist petitioner was suffering from delusions and unable to cooperate with counsel, testify, or make rational decisions about this proceeding. Since then Mr. Marer has represented petitioner in federal habeas corpus proceedings raising grounds other than those of the present proceeding.

Mr. Marer now contends that petitioner has made a prima facie showing that the state's intentional or negligent failure to furnish adequate psychiatric care while he was a prisoner at San Quentin caused deterioration of petitioner's mental health and resulted in instances of bizarre behavior that appear on his institutional records as disciplinary infractions. Counsel contends that petitioner is entitled to an evidentiary hearing with the burden on the state to rebut this claimed prima facie showing or at least to establish that petitioner is now receiving the best available psychiatric care.

He further contends that petitioner is entitled to an order directing the Adult Authority to disregard his record of prison disciplinary violations because his conduct resulting in that record was unintentional and caused by the lack of psychiatric care.

Petitioner is no longer imprisoned under the conditions that he alleged existed when we issued the order to show cause. The claimed past malfeasance of the state in not providing proper psychiatric care consists at worst of possible errors of judgment. (See *In re Riddle*, 57 Cal.2d 848, 858 [22 Cal.Rptr. 472, 372 P.2d 304].) Petitioner has shown no more than an honest disagreement of opinion among the staff at San Quentin as to whether his custody in 1967 should have been more psychiatrically oriented. That is not a showing that petitioner's fundamental rights were violated and the ordering of an evidentiary hearing that in no event could result in a determination that petitioner is entitled to habeas corpus relief would be futile.

We also reject the contention that petitioner is entitled to an order directing the Adult Authority to disregard disciplinary infractions that resulted from his mental illness. When the Authority considers fixing petitioner's term and setting a parole date, it will have before it his whole institutional history, including the instances during 1967 when the disciplinary committee did not punish petitioner for violations of prison rules because of his emotional instability as well as the instances when the committee decided that he should bear the responsibility for his behavior. The Authority's own rules provide that it shall have before it all records

of a prisoner's behavior in prison when it considers the fixing of his term and parole date. We cannot assume that it will ignore the parts of those records that show that some of petitioner's misbehavior was attributable to emotional illness rather than deliberate rebellion. Petitioner relies on our repeated holdings that a prisoner is entitled to correction of judgments imposing concurrent sentences in violation of the statutory prohibition of double punishment (Pen. Code, § 654), and he points out that we have stated that such judicial correction is necessary "to preclude the possibility that the multiple sentences would work a disadvantage to the defendant when the Adult Authority considered the fixing of his term and parole date." (*In re Wright,* 65 Cal.2d 650, 653 [56 Cal.Rptr. 110, 422 P.2d 998].) The rule reiterated in the *Wright* case, however, requires the correction of judicial error, whereas the rule that petitioner would have us adopt would require court interference with administrative determinations that the Legislature has assigned to the Adult Authority. (See *In re Mills,* 55 Cal.2d 646, 654 [12 Cal.Rptr. 483, 361 P.2d 15].)

The order to show cause is discharged and the petition for habeas corpus is denied.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Schauer, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.